I'm going to begin briefly by discussing the notion that the magistrate judge below came up with this matter before the court did not address a matter of public concern. The underpinnings of the case are that Susie Perry, and I was fortunate to represent her before the jury that bounded her favor in 2000 and awarded damages for retaliation for her failure to become a senior court clerk. She was denied promotion. Judge King, in his findings on the state law claim, similarly concluded the notion that Susie Perry's promotion was not a matter of public concern. She is easily put to rest because since she filed that lawsuit, concluding with the successful judgment in her favor, her promotion has always been a matter of public concern. Well, let's assume that fact. I think that's a fair statement that Perry's status, at least on the prior proceedings, to the extent it was found to be illegal discrimination, would be a matter of public concern. Where is the evidence that Ms. Thomas' conduct, her speech, whatever she was doing, was the heart of the dispute between her and her supervisor, Miller, that somehow in this myriad of paper that goes back and forth, there's precious little that says, I was protesting your illegal conduct. It comes across more as a dispute between Thomas and Miller as to whether or not Perry should be promoted or not. But where is the allegation that Thomas was standing up against racial discrimination or accusing Miller of simply a dispute between levels of management over who ought to be promoted or not? Let's put the question in context. If a woman complains to the employer about pornographic material, and the woman simply doesn't say, I think it's sexual harassment, I don't think there's any court or any question that there's a factual foundation, if not a legal conclusion, for the jury to then conclude that subsequent adverse action would be retaliation. Likewise, if a black man complained about the use of the N-word, I think you get to the same place. If someone simply complains about a salary issue without identifying that the belief is that the unfair salary is gender or race-based, I think that you can't get there. I don't think there is a foundation for the retaliation. In the context of this case, everyone knew that the city and its management team was opposed to the promotion of Sidney Perry. There was no mystery here. In fact, Thomas' direct supervisor told her there would be problems when Melinda Adler, who was one of the losing defendants in the previous case, if Susie Perry got promoted. There were repeated statements by Ms. Miller suggesting that for some reason, despite the verdict below, despite Judge King's findings, how qualified Ms. Perry was and how it was pretentious that she had not been promoted for all those years, for some reason, Ms. Miller in 2001 came up with the conclusion that she was incompetent and there would be trouble if Susie Perry was promoted. I don't think that Annette Thomas needed to say she should be promoted because not to promote her is retaliation or discrimination. I don't think you have to say that. I don't think those are magic words in the context where it was clear that there was an issue here about the city not wanting to promote Susie Perry. How does Miller know that, in any of this, that that is why Ms. Thomas is protesting? Where does Ms. Thomas ever tell Ms. Miller that what she is doing, even just as between them, is either carrying forward the aftermath of the prior proceeding or engaging in retaliation? Where does she ever surface that so Miller is ever in a position where she is continuing to act in the face of that? The most direct reference, I think, is in the second addendum where Ms. Thomas complains specifically about Ms. Miller trying to force her to leave her job to resign and focuses on the start to the point where there are problems being with Ms. Thomas' advocation for Ms. Perry's promotion. But she never says it was illegal. She simply says, look, I don't understand why you're down on me and have been really so negative about me. And as I look back, all of the problems started when I started standing up for Ms. Perry. Ms. Perry, who herself, as the apparent object of this protective activity by Ms. Thomas, doesn't even know or doesn't even perceive, apparently by her testimony, that Ms. Thomas is so acting that the process is somehow unfair to her. So you have sort of a sense of, yes, there was a prior proceeding. The employer's argument is, hey, we were just, okay, that was then, this is now, and Miller is in the process of exercising managerial judgment. And if there is a dispute between Ms. Thomas and Ms. Miller based on Ms. Thomas' belief that Miller and her superiors are acting illegally, either for racial discrimination or for retaliation, where's the evidence that Ms. Thomas surfaced that so anybody knew that was the basis of her resistance as opposed to having a disagreement with somebody who, in many respects, Ms. Thomas lays out in exquisite detail against Ms. Miller is a lousy manager, in her opinion. There's no direct evidence, Your Honor. There simply was not a complaint. There was not the use of the word discrimination or retaliation by Ms. Thomas. I don't think it's necessary. I think the true test is what the jury could conclude from the circumstantial evidence that Ms. Miller believed Ms. Thomas' opposition was. Well, let me ask you, let's assume Ms. Perry hadn't filed a lawsuit, but that basically Thomas was complaining about Perry not being promoted and Perry's African-American, is that correct? Yes. But she doesn't say anything about her being African-American. She simply is upset about her promotion and how things have gone. Would that be a matter of public speech? I think it still would. You do? Yes. So in other words, simply because the object of the discussion was African-American, one can assume that a complaint about that, therefore, is a race-based illegal employment discrimination type complaint. I wouldn't even go that far. I don't think the race would matter. I think proper promotion of public employees is a matter of public concern. I'm a supervisor. Okay. Well, that's helpful because it seems to me that once you go that far, you might as well give Connick no, basically, bookends because every single public employment case would, at least in your view, be a Connick case, right? Or to quote one of my colleagues in a recent public speech opinion, Katie barred the door. Just so I'm clear, yeah, if it was the employee who simply complained about the role of promotion, it would not be a matter of public concern. No, but someone else. And particularly the supervisor. And again, in the context here, we do have undoubtedly questions of race. So you're saying that if there's a dispute amongst management, the immediate supervisor, the first-level supervisor wants to promote, well, let's say the second-level supervisor wants to promote an employee into a first-level supervisor position that the third-level supervisor thinks is not competent. And the subject of the promotion dispute is African-American. The fact that there's a dispute between the second and third levels of management automatically makes it a matter of public concern. I believe so. Okay. So in that case, we wouldn't need, in your view, we don't even need the fact that Perry filed a lawsuit to put this within a matter of public concern as you interpret the cases. I take that position. Okay. I understand it. Because we have far more facts that demonstrate that everyone knew what this was about. At least I think there's an inference in the jury to draw that conclusion. And is it also your position that let's assume that the Supreme Court and the Ninth Circuit disagreed with you on that and said not every public employment dispute rises to the level of concern. Is it your position that if there are any facts underlying the circumstances of an employee about whom someone like Ms. Thomas is trying to take action, if there's any underlying facts, even though not articulated by Ms. Thomas, that could give rise to a public issue, that that inference alone also gets you into the public concern arena? In other words, she doesn't have to say anything about the lawsuit. It's just, if it's an underlying fact, basically the employer is tagged with it. Well, in fact, in this case, we have Ms. Miller telling, according to Ms. Thomas' affidavit, telling Ms. Thomas about the lawsuit. And there's going to be trouble for that with Ms. Adler if Ms. Perry gets promoted. I don't think the supervisor then needs to say to her supervisor to trigger the first amendment protection, you can't do that. That would be retaliation. I don't think you have to go that far. So our cases also tend to look at to the extent to which the person in Ms. Thomas' position has voiced or not voiced her concerns. The Nunez case is a conduct case where the supervisor refused to go along with the judge's clearly illegal conduct. In this case, you're suggesting that even though Ms. Thomas really never goes public with her basis for what she's saying, certainly not in any precise way, that that's still enough as long as, even if we don't go as far as sort of the per se rule, if the object of the dispute, in this case Ms. Perry is a minority, a protected category, so long as there's evidence that Ms. Thomas may have been acting out of an effort to resist or protest perceived illegal upper management conduct, that's enough to go to the jury on a matter of public concern. I agree, because except for, I guess, the so-called Nuremberg defense, Ms. Thomas would have been equally responsible if she had gone along with Ms. Miller and not promoted her. But, I mean, all we're talking about here is some requirement that there be some articulation in the process to alert or to lay the foundation for that being the true reason for Ms. Thomas' behavior. If it's held silently, then what are we to infer? I think you can get there with just what I've described in the record. However, in this case, we also have temporal proximity. We have the city not following its policies with regard to evaluations and monitoring, corrective action, evaluations relate. We also have pretext. We have not only Ms. Thomas' statements about her good performance, we have some of her subordinate statements about she was the best supervisor. There's no documentation of any problems with Ms. Thomas until she receives that performance evaluation that she disputes at great length. So it's not solely the sort of unstated proposition. It's the combination of the other items, types of evidence this court has repeatedly relied upon to provide a basis for concluding that there was projected activity and causation. What about Ms. Perry's testimony that she didn't think that the hiring process was unfair, etc.? Does that figure in at all to the analysis? I don't think so. What the evidence supports, despite what her colloquial opinion may be, is that on this time when successfully Ms. Perry got promoted, she, for the first time, the only time it ever happened, had been tested beyond anyone else. She'd been forced to serve three months as a sort of a temporary senior court clerk, and no one else had gone through that process before. She may have an opinion that it was fair. She may have wanted to keep her job, and I don't know what motivated the statement, but the fact of the matter is she was treated differently that time than any other senior court clerk on any other hiring occasion. The evidence is undisputed about that. I'll save a few minutes, unless the court asks. One other matter. The judge, the matric judge, did not address the Title VII claim. I mean, he mentioned the Title VII claim, just by reference. The standard's a little different for the opposition, I think, under Title VII to the retaliation, and I don't think it has to be a matter of public concern. I don't really think that's an issue here, but I think the standard's a little less, and I think under either standards, of course, the evidence supports the opposition, and therefore, temporal proximity in the pretext of a temporal, there's evidence of a substantial motivating factor in the opposition. What do you think is the substantive difference if we were to disagree with you on the matter of public interest question under the First Amendment? What do you think is the different standard that would permit the claim under Title VII? Well, I speak to that issue. I've had trial judges rule that a complaint, an individual complaint about discrimination may not be protected under the First Amendment, but it is protected under Title VII. I can't honestly offer any authority, because then it seems to me we would, well, under Title VII, I guess it's a retaliatory discharge claim. Is that correct? Yes. Well, a bad evaluation. A bad evaluation. No. So we would look at it under McDonnell Douglas and march through whether it was a prima facie case. I don't think in this case the analysis really changes, and I also, the defense really didn't argue much about Title VII. They really focused on the nature of the speech and whether or not it was novel. Right. So articulate for me under what basis on Title VII you think the claim would be. Opposition to unlawful activity, i.e. further discrimination or retaliation against the parent. Okay. It's identical content, really. All right. Thank you. Thank you. Thank you. May it please the Court, marking these spheres for defendants Edward Miller and Sylvia Beaverton. Ms. Thomas was a probationary at-will employee who could be discharged for any reason that was not illegal. Not only did she not tell her supervisor that she believed that her conduct was either racially discriminatory or retaliatory, she did not so state in her affidavit when she had the opportunity to prepare in response to the motion for summary judgment. Nowhere in there did she state that she believed that Ms. Miller's conduct was retaliatory or had anything to do with Ms. Perry's lawsuit. She only stated that she believed it was unfair. We also know that she believed, from her two addenda, that she believed that Ms. Miller was generally unfair and a bad supervisor. So without her telling Ms. Miller that she believed it was racially discriminatory, I don't believe we even arise to the level of public speech. And for the same reason under Title VII, we don't have a protected activity. Well, would you agree that if there was evidence to show that her firing or termination was linked in any way to her complaints about retaliation or discrimination against Ms. Perry, that that would be public speech? Yes, but there is no such evidence. And so then the question is, with that proposition established, is there circumstantial evidence enough to overcome summary judgment? And we focused on the fact that there was not a direct articulation. If you would address counsel's construct, which is although there might not have been a direct articulation, there was a mention about the lawsuit, there was the timing of the dealings with Ms. Perry and the termination of Ms. Thomas, there was the evaluation. And if you put all that together, that's enough to at least get you a prima facie case. What is your analysis of that? I'm not aware of any mention of the lawsuit, which is the only thing in the string of things you just recited that I think... Oh, I thought there was a mention. She says about the past that it's going to be a problem, or they're talking about the mayor, and it's going to be a problem with her and it's in connection with Ms. Perry's prior... Someone said that to Ms. Thomas, but Ms. Thomas certainly did not say Ms. Miller at any point that she believed it had anything to do with that. What she has told Ms. Miller is that she thought she was a very bad supervisor, incompetent, rude, and unfair, which would tend to indicate that the reason... that her reason for protesting as to Suzy Perry was that it was unfair, which is what her words were. Well, but she also... She felt it was unfair. But she also says in paragraph 10 of her affidavit that when she's comparing the others, she said those applicants had not complained or sued the city or its employees for unlawful employment practices, as had Mrs. Perry. So I had read through her declaration to suggest that this was... She also says Kim Thompson has not complained about racial discrimination or sued the city, or as has Ms. Perry. So it seems that what's being laid out here is that she's isolating on the nature of the resistance by Miller and the others, and singling out Ms. Perry, who has sued the city and charged racial discrimination. So I don't think it's... I think it would be hard to say that she wasn't dissociated, that she totally ignored those causes. Your Honor, she never did tell Ms. Miller that that was why she was protesting. No, I didn't. Yeah. So to the extent that you believe in the proposition that that's not an uncircumstantial evidence, but to the extent that it is, there's still several more steps to be gone through. I take your point. It's an interesting issue, which I was trying to address with your other counsel, which is assuming, which I think one has to assume, that discrimination by a public employer or retaliation by a public employer is a matter of public concern, and you have a mid-level manager who wants to oppose that conduct by her superiors, how far does that person have to go to be confrontational to carry out her obligations, that is, Ms. Thomas' obligations, to avoid being party to it or to resist it? Does she have to accuse Ms. Miller up front that she's engaging in racial discrimination or unlawful conduct, or is it enough if she works aggressively to prevent or be complicit in that kind of activity? I think there might be circumstances where that might be enough, but in this case, when you put it together with the tone of Ms. Thomas' addenda to her supervisor, it becomes fairly clear that this is an after-the-fact characterization of what was going on and that the actual reason why she was terminated was the tone of the addenda. But why was Ms. Thomas so resistant at the front, according to hers, and concerned about the attitude of Ms. Miller, who said, as counsel has recounted, and that's what we have to accept at this stage of the procedure. She thought it was unfair. She thinks that she's unfair generally. She thought she was unfair to her, and she's not African-American. She thinks she's a very unfair, incompetent, according to her own words, supervisor. Given the proximity and the sequence, and if we accept as true the allegation that Ms. Miller says that if Perry were promoted, there would be problems with Ms. Adler because of the previous lawsuit, why doesn't that create enough of an issue for a jury to examine into whether what was going on here was a mid-level employee trying to avoid being complicit or to prevent unlawful activity? And why isn't that a matter of public concern? I don't think that the proximity is sufficient. Well, that took place, she got a May 2000 verdict, and there's a reference to the lawsuit, and this is in February 2001. I mean, there's a reference to the lawsuit. Right. However, timing alone does not indicate that protected speech was a motivating factor. The Colzette or the City of Salem case, the plaintiff cites in their reply, says that. You don't look at timing alone. Well, no, I'm not looking at timing alone, but if you go through the sequence, and I've got the chronology here. I mean, you've got the May 4th jury verdict. You've got the allegation that when Perry now comes to apply, Miller invokes the prior lawsuit, and then from February to May, it's a fairly short time. I mean, six weeks can be forever in politics. If the court believes that that's sufficient, then I will have to agree to disagree, but I don't believe we stop there. There are several other levels of analysis we need to go through. Even assuming that it's protected, that it is protected speech. Why don't you proceed with those, because I think the district court stopped. I'm sorry? The district court more or less stopped. Yeah, and I just want to reiterate what I said in my brief, but it doesn't matter that the district court stopped there or that the magistrate judge stopped there as long as there's support in the record for the conclusion we're asking you to reach, and the district court, in fact, did set forth the elements of the claims. Beyond showing that she was engaged in constitutionally protected speech, she has to demonstrate that the expression was a substantial motivating factor for the adverse action, and it is our position that she did not demonstrate this given the clear insubordination of her agenda and also the clear reasons given for the extended probation in the appraisal. However, even if it were a substantial motivating factor, we still don't stop there. The employer now needs to show either that it had a legitimate administrative interest outweighing plaintiff's First Amendment rights or that it would have made the same decision. Assuming that there's a First Amendment violation, it would be pretty hard for an employer to say it has administrative reasons to overcome that. So what's the other? That it would have reached the same decision without the speech. And the question I have on that is when we start moving down those other prongs is that the city may well be successful, but is that a question of fact at this point? I don't believe so. I think the reason is made so plain by plaintiff's agenda and the tone that she took to her employer that in this circumstance it can be decided as a matter of law that they would have made the same decision no matter what, that this woman felt she could no longer work with someone who told her she was incompetent, that she didn't set a good example. But one of the reasons that she can't work with her is because she keeps complaining about Ms. Perry. No, that's not why she says she couldn't work with her. She says she couldn't work with her because of the tone of the second addendum. She did not say it was because of the complaints about Ms. Perry. So in other words, you think that as long as the employer says what the reason is, that there's no room for a trial on that topic? No, I don't think that. Of course she's not going to say, oh, and by the way, I'm so ticked off at you for bugging me about this lawsuit thing. Nobody's going to say that. So the fact that she says, okay, I don't like these addenda, I don't like the tone of it, you're fired. How do we distinguish on an appellate level whether, even though that's certainly a reason, whether or not the retaliation against Ms. Perry was also a substantial motivating factor? I think because, again, you have to look at everything in context. Ms. Miller gave an assessment to Ms. Thomas in which she told her several things that she thought she was doing well, told her a couple of things she needed to improve on, and told her she wanted her to succeed, that she wanted to help her to succeed, and she would try to give her better feedback to help her to succeed. And in response to that, she received basically nine pages of abuse. And I think in light of that, it seems apparent that the reason was not pretextual, that it was a substantially substantial reason, and that wanting to protect the legitimate administrative interests of being able to supervise this woman would outweigh. The problem that you have once you get, and that's why it's important to focus on the front end in this case, once you get a triable issue on whether or not the employee is engaged in a protected activity, it's pretty hard for an appellate court to then go through the process and say, notwithstanding, especially on a summary judgment standard where we have to draw inferences favorable to the plaintiff, that all of this play out then between the two managers, ordnance and superior, aren't a proxy or a cover for what is fundamentally retaliation for an employee who's gotten in the way of the city or the official, the municipal official, trying to carry out a retaliation against that other employee. So sure, I mean, a manager knows how to write evaluations that carry the little dagger with the velvet glove. I mean, that's all issues for the jury to resolve, it seems to me, just because an employee could be very upset and angry at her manager because she thinks she's been unfairly attacked, not for the reasons stated in the evaluation, but because, ultimately, because she stood up to her superior to prevent this unlawful activity. Now, I will acknowledge that it's a precious little overt statement by Ms. Thomas that that's what really was going on, but I think, you know, to speak for myself, I think that's the problem with the case. Which is what I was just going to say. If she was angry that she thought that the assessment was based on her standing up for Ms. Perry, she certainly didn't say that. Well, she did say... She adverted to it. She said things started to become uncomfortable about the time I interviewed for the senior position and told you I was considering Suzy for the job. Again, she says nothing about that you were retaliating. Correct. She sort of says this is when it got weird, and she lists a whole bunch of other things. And she doesn't tie it to Suzy's lawsuit. Yeah, and she lists several other factors there. Also, in the Connick case, which is a U.S. Supreme Court case, we had an assistant district attorney who opposed her transfer and distributed a questionnaire, which the court found there was some public concern involved in the questionnaire. However, they applied the Pickering balancing test and decided that the... Yeah, but Pickering balancing then goes to the jury. No, the court applied it themselves. Well, if there's a tribal issue, it goes to the jury. Well, the court found what I'm saying is it's not always a jury question. Yeah, we have a lot of cases in the Ninth Circuit where we apply it on summary judgment. Yeah, and Connick, they applied it on summary judgment. They did not send it to the jury. I'm just giving you an example of a case where that was the case. Would you like me to address the state court claims they do not seem to have... Do you disagree with the counsel's argument that even if we were to conclude that it isn't a matter of public concern, there's still a Title VII issue then? No. And the reason is? Because the Title VII claim is based upon opposing discrimination against Miss Perry. It's the exact same facts. So I don't see a distinction there. It's going to be the same, and the state claims are going to essentially fail. Right. They rise and fall on what we decide on the others. Are there no further questions? No. All right. Just a couple of points before I ask a question. The reference was made to the fact that Miss Thomas has never asserted that her termination was retaliatory. She didn't say that. What she said was it was not in the affidavit. I think it is. Paragraph 20. Paragraph 20. She specifically talks about she believes her treatment was because of her opposition to the treatment of Miss Perry. So I think the counsel is wrong. Just briefly on the question of timing, Miss Perry wasn't promoted until May 6th, and the problems that Miss Thomas really had were in response to her May 25th end. I mean, six days later, she was terminated. And I certainly think a clear and close order, a series of three and five and eight, even 11 months, are not insufficient to creating an inference of retaliation. And so I think the court absolutely is correct in its comments to the effect that those are simply fact questions as to whether or not there was causation or substantial motivating factor in this case. Likewise, if the employer could get away with simply stating a good reason, a legitimate reason for firing you, you never have a deployment case. They always state that. And those are simply fact questions as well when there is evidence challenging as pretext and false the reasons given for the termination. And in this case, Miss Thomas and her subordinates support her good performance. The record is devoid of any record suggesting that she wasn't performing well until the evaluation period. So, again, those are fact questions. The jury has to sort all that out. Thank you. Thank you, counsel. And the case of Thomas v. Beaverton is submitted. The final case for argument this morning is AGA v. Rational Software Corporation. Thank you. Thank you. You may proceed.
judges: Goodwin, McKeown, Fisher